# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| Myan Management Group, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 7:20-cv-126 |
| | § | |
| GuideOne National Insurance Company, | § | |
| | § | **JURY DEMANDED** |
| Defendant. | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Myan Management Group, LLC, Plaintiff herein, files Plaintiff's Original Complaint against Defendant GuideOne National Insurance Company, and, in support of its causes of action, Myan Management Group, LLC, would respectfully show the Court the following:

## I.
## THE PARTIES

1.  Myan Management Group, LLC ("Myan") is a limited liability company formed in the State of Texas. Myan's members are Bruce Woodward, Sherri Williams as Trustee of the Williams Family Trust, and Myan Partners, Inc. All members of Myan reside in Texas.

2.  Defendant GuideOne National Insurance Company ("GuideOne," "Defendant" or "Insurer"), is an insurance company that is a citizen of the State of Iowa because its principal place of business is in Iowa and it is incorporated in the State of Iowa. GuideOne can be served via proper process at 1111 Ashworth Road, West Des Moines, IA 50265-3538, or through its registered agent, the Texas Insurance Commissioner, pursuant to TEX. INS. CODE § 804.103(c)(1)–(2) and TEX. INS. CODE § 804.201(a)(5), (b)(A)(1)–(2), via certified mail, including a $50 service fee. Service on the Commissioner counts as service on the Defendant.

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332.

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas. The property at issue in this cause is in the Western District of Texas in the Midland-Odessa Division.

## III.
## FACTUAL BACKGROUND

5. Myan is a named insured under a property insurance policy issued by GuideOne identified as Policy RTCP1218S1817232 ( ("Policy").  At all times relevant to this suit, Myan was the named insured of the commercial property known as the Greenmark at Andrews Apartments located at 200 NW Ave. M, Andrews, TX 79714 ("Property"). The Policy's term was from December 15, 2018 to December 15, 2019.

6. On or about March 12, 2019, and/or at all times within the period of Plaintiff's Policy with Defendant, a the Property sustained a massive wind/tornado event causing extensive damage to the roofing system and exterior of the Property, including the concrete panel wall. According to CBS7 in Andrews, Texas, the storm caused overturned trailers and broken houses all around. Houses were strewn all over the neighborhood. Local resident Anna Randon stated "it sounded like a roar". Randon also stated a massive oil tanker rolled all the way from an oilfield lot right into her family's backyard stopping mere feet from the family's door.

7. Myan duly reported the wind damage to GuideOne shortly after the storm. GuideOne acknowledged receipt of the claim and commenced its investigation.

8. On January 16, 2020, GuideOne issued correspondence denying a significant portion of the damage from the wind event as well as previously represented monies for overhead and profit.

9. An adequate investigation of the wind damage to the Property would have revealed obvious structural damage to the concrete precast wall surrounding the Property. For example, concrete panels were blown away from the wall by the storm:



Photo 23:   View of missing concrete panels at the rear left (lower panels in place).



Photo 61:   View of missing concrete panels at the rear of the property.



View of after storm of fallen concrete panels (owner provided photo taken March 13, 2019)



View of blown-off shingles on the ground (owner provided photo taken March 13, 2019).

10. GuideOne hired Engle Martin & Associates ("Engle Martin"), an adjusting firm that works for insurance companies, to investigate the claim. Engle Martin inspected the Property, along with Myan's roofing contractor, on April 9, 2019. At the inspection, Engle Martin found overwhelming evidence of wind damage to the roof system of the Property. The cost of repairs to the roof totaled at least $405,105.95. After Myan's deductible was applied, Myan Management received a net total payment of $304,717.55 from GuideOne to repair the roofing system.

11. GuideOne then retained engineer Luis Espino ("Espino") of J.S. Held, an engineering firm that works primarily for insurance companies, to examine the wall of the Property. Espino inspected the Property on June 4, 2019, nearly three months after the storm. Espino confirmed that weather reports from March 12, 2019 indicated the presence of "severe thunderstorms with large hail, strong winds, and tornadoes" near the Property. However, he

somehow determined that any damages to the wall of the Property were not caused by wind. Instead, Espino reasoned that the damages to the wall of the Property were caused by "age-related deterioration, vandalism, and construction errors and not wind forces." Espino also concluded that "[f]allen panels, mistaken by others as caused by wind, actually had resulted from construction errors and deterioration."

12. Mr. Espino's research revealed the first sections of the pre-cast wall were installed in November of 2011 (about 75%) and then about 25% of the wall was completed in November of 2016. The onsite representative conveyed to Mr. Espino the concerns the winds caused cracks in the pre-cast concrete panels throughout the wall. While acknowledging the concrete panels were in poor condition and lying on the ground, Mr. Espino attributed all of this damage to non-wind related causes. Despite Engle Martin's determination that the damage to the Property's roofing system warranted a payment of $304,717.55, Espino somehow determined the extensive damage to the wall surrounding the Property was completely unrelated to the windstorm. Based upon Espino's findings, Engle Martin recommended that GuideOne deny the portion of the claim relating to the wall damages. And GuideOne did just that.

13. The engineer and representatives assigned to Myan's claim by GuideOne were improperly trained and failed to perform a thorough investigation of Myan's claim. Espino conducted a substandard inspection of the Property during which he spent an inadequate amount of time inspecting the physical property, failed to conduct any testing of wind damage and its impact on the structure and failed to thoroughly scope all the damages to the Property. Espino did use any expertise to rule out damage caused by wind as opposed to other causes. Further, GuideOne did not even attempt to conduct a simple interview of witnesses to provide information as to the condition of the wall both before and immediately after the storm, which would have revealed

whether the wind did in fact cause the damage. The representatives for GuideOne performed zero testing and disregarded the weather data that demonstrated the damage caused by the significant windstorm occurred within the Policy period prior to rendering their coverage decision. The engineering firm hired by GuideOne simply came to a conclusion without reference to any thresholds for damage to this material, analysis of wind speed or anything else to determine a true cause for the damage. GuideOne simply determined the verified damage to the Property was not caused by wind without any reasonable basis. Espino ignores the fact the extensive wind damages to this site were observed and documented by owner/management only after a tornado and reported high wind event passed in this area on March 12-13, 2019. The inadequacy of the inspection and investigation is further evidenced by GuideOne's failure to give Myan an adequate explanation as to why the damage was not caused by wind, why no scientific analysis was done, why no interviews were done, why no testing was done and why the damage did not warrant wall replacement despite a significant wind event during the Policy that warranted repairs in the hundreds of thousands of dollars for the roof. GuideOne failed to properly scope Myan's damages, underestimated and undervalued the cost of repairs to the damaged items, thereby failing to allow any funds to cover the cost of repairs to the damages sustained to the wall surrounding the Property. GuideOne's zero dollars coverage evaluation of the Property's wall meant Myan would receive nothing to repair the wall despite the extensive wind damage to the Property.

14. To make matters worse, GuideOne's retained adjuster represented to Myan the overhead and profit for the repairs to the covered damage they accepted (the roof) would be covered, to the tune of $80,361.58. Months later, well past the statutory allotted deadlines, GuideOne reversed course and denied that portion of the covered loss.

15. After a licensed engineering firm, Alliance GC Group Inc. ("Alliance"), retained on behalf of Myan inspected the damage, it determined the actual covered damages to Myan's property were caused by wind, which was "consistent with the tornado and high wind event in the vicinity on March 12-13, 2019." Moreover, Alliance found that construction defects were not significantly related to the damages. After a thorough inspection of the Property by a retained engineer and licensed contractor, it was determined the cost to repair the fencing would amount to at least $312,618.39.

16. Although GuideOne and Espino were aware of Myan's clear and present wind damage and the reported damage was covered by the Policy, they decided the claim should be denied without conducting a thorough and reasonable inspection of the damages and misrepresenting the terms of the Policy. After requesting GuideOne reconsider its improper investigation and denial, GuideOne refused. Again, this meant Myan would receive zero dollars to perform the necessary repairs to the fencing of the Property

17. GuideOne, along with other GuideOne personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Espino, ultimately approving an improper inspection of and an inadequate and improper denial of Myan's claim. GuideOne misrepresented Myan's damages were not covered when the losses in fact were clearly covered causes of loss during the Policy's period. Specifically, GuideOne represented to Myan none of the damage to the wall was caused by a covered cause of loss within the Policy period when, in fact, GuideOne knew, or with a reasonable investigation should have known, that the cost of repairs to the wall was a clear covered loss.

18. Together, GuideOne and its employees set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide any coverage for the damages

sustained, Myan's claim was improperly adjusted, and Myan was denied proper payment to repair its property. To this date, Myan has yet to receive any payment under the insurance Policy to repair the wall and GuideOne continues to withhold the overhead and profit payment to the roof previously promised.

## IV.
## CAUSES OF ACTION

19. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.     Breach of Contract**

20. GuideOne had a contract of insurance with Plaintiff.  GuideOne breached the terms of that contract by wrongfully denying the claim and Plaintiff was damaged thereby.

**B.     Prompt Payment of Claims Statute**

21. The failure of GuideOne to pay for the losses and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

22. Plaintiff, therefore, in addition to Plaintiff's claim for damages, is entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.     Bad Faith/Deceptive Trade Practices Act ("DTPA")**

23. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

24. Defendant violated Section 541.051 of the Texas Insurance Code by:

    (1)    making statements misrepresenting the terms and/or benefits of the policy. As reference above, GuideOne mispresented coverage for wind damage to the Property during the Policy period was a covered cause of loss and misrepresented to Myan the coverage's terms.

25. Defendant violated Section 541.060 by:

    (1)    misrepresenting to Plaintiff a material fact or policy provision relating to coverage at issue;

    (2)    failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

    (3)    failing to promptly provide to Plaintiff a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

    (4)    failing within a reasonable time to affirm or deny coverage of a claim to Plaintiff or submit a reservation of rights to Plaintiff; and

    (5)    refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, GuideOne failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information relied on its investigation, failed to conduct testing of the damage, failed to allocate damage occurring during the Policy, and improperly claimed no wind damage reported on the date of loss caused damage to the wall.

26.    Defendant violated Section 541.061 by:

    (1)    making an untrue statement of material fact;

    (2)    failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

    (3)    making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented wind damage that occurred during the Policy was not a covered loss, failed to provide requested information used to render its claim decision, and claimed damage was preexisting without conducting a reasonable investigation.

27.    At all material times hereto, Plaintiff was a consumer who purchased insurance products and services from Defendant.

28.    Defendant has violated the Texas DTPA in the following respects:

    (1)    Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

    (2)    GuideOne failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed;

    (3)    GuideOne, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that GuideOne took advantage of Plaintiff's lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid

in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

29. Defendant knowingly committed the acts complained of. As such, Plaintiff is entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.   Breach of the Duty of Good Faith and Fair Dealing**

30. Defendant GuideOne's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiff.

31. Defendant GuideOne's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiff's claim, although, at that time, Defendant GuideOne knew or should have known by the exercise of reasonable diligence that its liability was reasonable clear, constitutes a breach of the duty of good faith and fair dealing.

**KNOWLEDGE**

32. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

**E.   Attorneys' Fees**

33. Plaintiff engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

34. Plaintiff is entitled to reasonable and necessary attorney's fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiff is represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

35. Plaintiff further prays that Plaintiff be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiff's causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## V.
## CONDITIONS PRECEDENT

36. All conditions precedent to Plaintiff's right to recover have been fully performed, or have been waived by Defendant.

## VI.
## PRAYER

37. WHEREFORE, PREMISES CONSIDERED, Myan prays that, upon final hearing of the case, it recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Myan be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Myan may show itself to be justly entitled.

Respectfully submitted,

*/s/ Jeffrey T. Embry*
Jeffrey T. Embry
Bar Number: 24002052
Attorney-in-Charge
515 S. Vine Ave.
Tyler, Texas 75702
Christopher P. Peirce
Bar Number: 24046604
Hossley Embry, LLP
515 S. Vine Ave
Tyler, Texas 75702
Telephone No.  903-526-1772
Telecopier No.  903-526-1773
jeff@hossleyembry.com
cpeirce@hossleyembry.com
**ATTORNEYS FOR PLAINTIFF**